IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TODD CONSTRUCTION CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-381C |
| | ) | (Judge Wheeler) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), the United States respectfully requests that this Court enter summary judgment in our favor. The plaintiff's claim fails for two reasons. First, the plaintiff, Todd Construction Co. ("Todd"), has released all claims against the United States arising from the disputed contract. Second, Todd seeks an equitable adjustment for something it was contractually constrained to do, which is impermissible; to the extent the contract was unclear, any ambiguity in the contract was patent, and Todd had a duty to determine its obligations before submitting a bid. In short, Todd's claim is meritless, and no genuine disputed issues of material fact preclude judgment in our favor. Accordingly, the Court should grant our motion for summary judgment. In support of our motion, we rely upon this brief, our proposed findings of uncontroverted fact, and the appendix attached to this brief.

**STATEMENT OF THE ISSUES**

1. Whether Todd's execution of an unconditional release of all claims arising from its contract bars its claim.

2. Whether the contract, on its face, required Todd to install bleachers, precluding Todd's claim for an equitable adjustment.

3. Whether any ambiguity in the contract was patent, obligating Todd to inquire of its obligations pursuant to the contract before submitting its bid and foreclosing reliance upon the ambiguity now.

## STATEMENT OF THE CASE

On March 17, 2005, Todd submitted an "unsolicited proposal" to the Government during contract performance in which it sought additional time and money for the installation of bleachers required under the contract. App. 16.[1] The contracting officer treated this proposal as a claim pursuant to the Contract Disputes Act, and initially denied the claim, but also allowed Todd to submit additional information to support its claim. App. 26. The parties then conducted a conference by telephone on May 5, 2005, and Todd presented additional information. App. 27. On May 16, 2005, the contracting officer denied Todd's claim. App. 29-32; see also dated copy attached to Todd's May 10, 2006 Complaint. The contracting officer reasoned that the requirement to construct bleachers was clearly provided for in the contract specifications and drawings, though she found that Todd was not required to install "telescoping" bleachers, which were not provided for by the drawings. App. 31-32. Todd appealed the contracting officer's denial of its claim to this Court on May 10, 2006.

## STATEMENT OF MATERIAL FACTS

The United States Army Corps of Engineers ("COE") awarded Contract No. DACA21-03-D-0021 (Solicitation No. DACA21-03-R-0064-001) to Todd on September 28, 2003. App. 2.

---

[1] "App. ___" refers to the appendix attached to this brief. For the sake of convenience, the page numbers of the appendix match the Bates numbers originally assigned to the documents; consequently, there are gaps in the numbering of the appendix where immaterial documents were not included.

The scope of work for the contract encompassed various construction projects on the Seymour Johnson Air Force Base in Goldsboro, North Carolina, including project number VKAG 99-1137, which involved the construction of an addition to a personnel deployment facility ("PDF Addition"). App. 8-10. The notice to proceed for the PDF Addition was issued and received on June 16, 2004. App. 11.

At a weekly meeting between COE and Todd in early 2005, while construction of the PDF Addition was underway, COE asked Todd when certain bleachers would be installed in the building. App. 34. The parties then realized that COE had inadvertently omitted the specifications for the bleachers from the initial specifications package. App. 34; App. 37. Following up on this meeting, on February 9, 2005, COE provided Todd with the specifications and requested that Todd provide submittals for the bleachers as soon as possible.[2] App. 37-41. COE reiterated this request by letter on February 24, 2005. App. 42.

In response to COE's request, Todd provided an "unsolicited proposal" for the bleachers on March 17, 2005. App. 16-24. Todd proposed to charge COE $30,588 for the bleachers. App. 17. In the cover letter to its proposal, Todd also advised COE that installing the bleachers would add 105 days to the project's schedule. App. 16. Todd asserted that COE "should issue a modification to the contract due to the original specifications omitting this section and for not having enough information on the drawings to be able to estimate this cost." App. 16. Todd eventually installed wood telescoping bleachers. App. 47

The specifications for the bleachers were omitted from the original specifications package, but references to bleachers were made in three of the contract documents. First, the

[2] COE first sent Todd a set of bleacher specifications on January 26, 2005. App. 44. COE sent revised specifications with the February 9, 2005, letter. Id.

table of contents to the specifications contained a subheading for "Telescoping Stands." App. 96. Second, the schedule of material submittals contained four line items related to telescoping stands. App. 372. Third, four of the drawing sheets for the building refer to bleachers. App. 376A-B; App. 377A-B; App. 378A-B; App. 379A-B. The first of these sheets, floor plan Drawing A1, specifies the capacity of the bleachers, 230 seats, and the width of the bleacher section. App. 376A. The second sheet, section and detail Drawing A3, shows the number of rows and the height of the bleacher section. App. 377B. The third and fourth drawings are plumbing floor plans that also refer to the bleachers. App. 378A; App. 379A.

The solicitation for the PDF Addition contained language relevant to the inadvertent omission of detailed specifications. Standard clause 52.236-21, Specifications and Drawings for Construction, provided that "[a]nything mentioned in the specifications and not shown on the drawings, or shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned in both." App. 540. This clause also specified that "[i]n case of discrepancy in the figures, in the drawings, or in the specifications, the matter shall be promptly submitted to the Contracting Officer, who shall promptly make a determination in writing," specifying that "[a]ny adjustment by the Contractor without such a determination shall be at its own risk and expense." Id.

Todd's contract pricing documents reflect that Todd was aware of the bleacher requirement and included bleachers in its price estimate. In its initial proposal, Todd provided COE with a breakdown of its costs for the PDF Addition. App. 52. This list includes a line item titled "Metal Bdg. & Specialities, Complete," which lists a price of $88,832. Id. The line item is described further in another of Todd's pricing documents, a "CostWorks 2003" estimate. App.

79-81. This document contains a sublist titled "Specialties, Complete." App. 81. The sublist contains a line item for "Grandstands, perm, municipal, incl fndtn, cmpst, st, wd&plstc, stk dsgn, max," with a quantity of 230 listed — which corresponds with the seat quantity specified in the drawings — and the "Unit" listed as "Seat." App. 81; App. 376A. The total price for this line item is listed at $35,420. App. 81.

Todd presented its final request for payment to COE on February 28, 2006. App. 84. With this request, Todd also submitted a release of claims, signed by Todd's Vice President, J. Dube Putz. App. 90. This release provided:

> The undersigned contractor, under above numbered contract, between the United States of America and said contractor, in accordance with paragraph (f) of the "Payments under Fixed-Price Construction Contracts" clause of said contract and upon acceptance of the final payment hereunder, hereby releases the United States, Officers, Agents, and employees from any and all claims arising under or by virtue of said contract of any modifications or change thereof except with respect to those claims, if any, listed below: (itemize claims and amounts)
> NONE
>
> DATE: 02/28/2006 s/ J. Dube Putz

App. 90

This release was executed pursuant to the final payment clause in the contract, FAR 52.232-5(h), which provided that the Government would furnish final payment after Todd presented a "release of all claims against the Government arising by virtue of this contract, other than claims, in stated amounts, that the Contractor has specifically excepted from the operation of the release." App. 519-21.

## SUMMARY OF THE ARGUMENT

Todd's claim fails for two reasons. First, Todd has released all claims against the United States arising from the contract. The Court could grant our motion for summary judgment upon the basis of the release alone, but Todd is not entitled to any recovery here because the contract at issue required Todd to install the disputed bleachers, foreclosing any equitable adjustment. This requirement was evident from the face of the contract and is reinforced by Todd's submission of bleacher pricing information with its bid. To the extent that the bleacher requirement was unclear, the contract was patently ambiguous, and Todd, which was fully aware of the requirement, had a duty to inquire of the Government regarding its obligations pursuant to the contract. Todd's failure to so inquire precludes its right to relief in this Court. Accordingly, the Court should grant our motion for summary judgment.

## ARGUMENT

### I. Summary Judgment Standards

Summary judgment is appropriate when the record shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Moden v. United States, 404 F.3d 1335, 1342 (Fed. Cir. 2005) (citing RCFC 56(c); FRCP 56(c)). A factual issue is "genuine" only if the Court could find for the party opposing summary judgment and "material" only if the issue could affect the judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The mechanism of summary judgment is "designed 'to ensure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting FRCP 1). Resolving a dispute via summary judgment is appropriate in contract interpretation cases, which turn upon questions of law. Varilease Technology Group,

Inc. v.United States, 289 F.3d 795, 798 (Fed. Cir. 2002).

The moving party bears the burden of showing that no genuine issue of material fact preclude summary judgment. Celotex Corp., 477 U.S. at 323. All justifiable inferences should be drawn in favor of the nonmovant. Anderson, 477 U.S. at 255. Nevertheless, the party opposing summary judgment must show an evidentiary conflict on the record. American Airlines, Inc. v. United States, 204 F.3d 1103, 1112 (Fed. Cir. 2000). Factually unsupported argument is insufficient to defeat a motion for summary judgment. Id.

## II. Todd's Release Of Claims Bars Its Claim

Todd is not entitled to any recovery because it has released all claims against the United States relating to the contract at issue. App. 90. Absent special vitiating circumstances, a general release bars claims based upon events occurring prior to the date of the release. Johnson, Drake & Piper, Inc. v. United States, 531 F.2d 1037, 1047 (Ct. Cl. 1976). A court should not imply an exception to this rule when the facts of a claim were "well enough known for the maker of the release to frame a general description of it and request an explicit reservation." Id. Exceptions to releases are construed strictly against contractors and given effect in only "special and limited circumstances." Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1395 (Fed. Cir. 1987). Such circumstances include economic duress, fraud, mutual mistake, or plain conduct on the part of the agency indicating a post-release consideration of a contractor's claims. Id. A contractor's mere intent not to waive a claim when it signs a general release of claims is insufficient to raise a genuine issue of material fact to preclude summary judgment for the Government. Id. at 1395-96.

In Mingus, the contract at issue contained a "Payments to Contractor" clause providing

that the Government would pay the contractor the amount it was due "after the Contractor has furnished the Government with a release of all claims against the Government, arising by virtue of this contract, other than claims in stated amounts as may be specifically excepted by the Contractor from the operation of the release." Mingus, 812 F.2d at 1392. Accordingly, before issuing final payment, the Government asked the contractor to sign a release of claims. Mingus, 812 F.2d at 1389. The contractor did so, releasing all claims against the agency, though "in the space provided for exceptions, Mingus typed the following statement: 'Pursuant to correspondence we do intend to file a claim(s)—the amount(s) of which is undetermined at this time.'" Id. Noting that exceptions to releases are construed strictly against the contractor, the Court of Appeals for the Federal Circuit held that Mingus's attempt to take exception to the release was ineffectual; the Court held that Mingus's claims were barred by the release. Id. at 1393-95.

Mingus dictates the outcome in this case. The contract here contained a "Final payment" clause, providing for a mandatory release of claims, similar to the payments clause contained in Mingus, FAR 52.232-5(h). See App. 519-21. Just like the contractor in Mingus, Todd signed a release of claims. See App. 90. This release barred "any and all claims arising under or by virtue of" the contract between the parties. See id. Todd failed to note any exceptions to the release, unlike the contractor in Mingus, which at least attempted, though poorly, to preserve its rights. Mingus, 812 F.2d at 1389. Todd has no excuse for this failure; it signed the release on February 28, 2006, after it had already made its claim known to COE, on March 17, 2005, and after the contracting officer had denied the claim, on May 16, 2005. App. 90; App. 16; App. 29-32. Todd's execution of an unconditional release accordingly bars its claim in this Court, and

the Court should thus grant our motion for summary judgment.

## III. Todd's Equitable Adjustment Claim Is Without Merit

### A. Todd's Claim Is Based Upon The Constructive Change Doctrine

Todd bases its complaint upon "the doctrine announced by the United States Supreme Court in *United States v. Spearin*, 248 U.S. 132 (1918), applicable provisions of the Federal Acquisition Regulations ('FAR') and past decisions of this Court . . ." Compl. 2. While the precise contours of Todd's claim are unclear, the claim submitted by Todd to the contracting officer took the position that "the Government should issue a modification to the contract due to the original specifications omitting this section and for not having enough information on the drawings to be able to estimate this cost." App. 16. Todd thus appears to seek an equitable adjustment in the contract price.

One possible foundation for Todd's claim is the "Changes" clauses contained in the contract, FAR 52.243-1 and 52.243-4. App. 544-45. When the contracting officer does not issue a formal change order, a contractor "may elect to treat the contracting officer's directive as a constructive change order and prosecute a claim for an equitable adjustment under the 'changes' provision of the contract," where the contracting officer "requires the contractor to perform work or to utilize materials which the contractor regards as being beyond the requirements of the pertinent specifications or drawings." Ets-Hokin Corp. v. United States, 420 F.2d 716, 720 (Ct. Cl. 1970). To identify a constructive change, the Court should consult the relevant contract language. Aydin Corp. v. Widnall, 61 F.3d 1571, 1577 (Fed. Cir. 1995).

We do not dispute that the contracting officer ordered Todd to install bleachers in the PDF Building. See App. 32. The installation of the bleachers, however, was not beyond the

"requirements of the pertinent specifications or drawings," and Todd's claim accordingly fails, as we explain below. See Ets-Hokin Corp., 420 F.2d at 720.

**B. The Contract Required The Installation Of Bleachers**

Contract interpretation begins with the plain language of the agreement. Coast Fed. Bank, FSB v. United States, 323 F.3d 1035, 1038 (Fed. Cir. 2003) (en banc). If that language is "clear and unambiguous," this Court gives the terms of a contract their "plain and ordinary meaning." McAbee Const. Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996). When interpreting a contract, the Court gives meaning to all of the contract's provisions. M.A. Mortenson Co. v. Brownlee, 363 F.3d 1203, 1206 (Fed. Cir. 2004). An interpretation that "gives meaning to all parts of the contract is to be preferred over one that leaves a portion of the contract useless, inexplicable, void, or superfluous." NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004).

If contract details are depicted in drawings but omitted from specifications, a contractor is nevertheless required to comply with the drawings when the contract contains a so-called "like effect" clause. Centex Const. Co., Inc. v. United States, 49 Fed. Cl. 790, 792-93 (2001) (citing cases and noting that "[t]his clause has consistently been interpreted to require a contractor to comply with drawings even where details depicted therein are not listed in the specifications."); see also Unicon Management Corp. v. United States, 375 F.2d 804, 806 (Ct. Cl. 1967). In Unicon, for example, a contractor claimed it was not required to install steel plate flooring where the contract specifications made no reference to steel plates but the contract drawings provided for such flooring. Id. The Court of Claims held that the drawings, pursuant to the contract's "like effect" provision, supplemented the specifications and required the installation of the steel

plates. Id.

Here, we do not dispute that the Government inadvertently omitted detailed specifications regarding the contract's bleacher requirement from the specifications package. Nevertheless, the contract did include enough information to alert Todd to the necessity for bleachers. First, the specifications' table of contents, which is only two pages long, contains a reference to "Telescoping Stands." App. 96. Second, the schedule of material submittals contained four line items related to telescoping stands. App. 372. Third, four of the drawing sheets for the building refer to bleachers, and include information regarding the capacity and dimensions of the bleachers. App. 376A-B; App. 377A-B; App. 378A-B; App. 379A-B. The information contained on these drawings requires installation of the bleachers, pursuant to the contract's like-effect clause. App. 540; Centex, 49 Fed. Cl. at 792-93.

When read as a whole, then, the contract required Todd to provide bleachers. Todd apparently recognized this requirement in its pricing documents, which included a $35,420 estimate for bleachers (roughly $5,000 more than what Todd now claims the bleachers cost to install). App. 81; App. 17. Todd's claim for an equitable adjustment must accordingly fail. Todd cannot prove that COE required Todd to do anything "beyond the requirements of the pertinent specifications or drawings," a necessary element of an equitable adjustment claim. See Ets-Hokin Corp., 420 F.2d at 720; see also Sauer Inc. v. Danzig, 224 F.3d 1340, 1348 (Fed. Cir. 2000) (noting that an allowable equitable adjustment is "the difference between what it cost the contractor to do the work and what it would have cost the contractor if the unforeseen conditions had not been encountered." (internal brackets and quotation marks omitted)).

Because Todd cannot show that it is entitled to an equitable adjustment, the Court should

grant our motion for summary judgment.

**C. If The Contract Was Ambiguous, It Was Patently Ambiguous**

Even if the contract was ambiguous regarding Todd's duty to provide bleachers, that ambiguity was glaring, and Todd accordingly had a duty to inquire about its obligations. Todd's failure to do so precludes its right to relief in this Court.

If a contract is reasonably susceptible to more than one interpretation, it is ambiguous. Teg-Paradigm Environmental, Inc. v. United States, 465 F.3d 1329, 1338 (Fed. Cir. 2006). Once the Court determines a contract is ambiguous, it should next decide whether that ambiguity is patent or latent. Metric Constructors, Inc. v. NASA, 169 F.3d 747, 751 (Fed. Cir. 1999). An ambiguity is patent if it so glaring as to raise a duty to inquire. Id. A glaring ambiguity may include an "obvious omission, inconsistency, or discrepancy of significance." Beacon Const. Co. of Mass. v. United States, 314 F.2d 501, 504 (Ct. Cl. 1963). If such an ambiguity exists, a contractor has an affirmative duty to "to inquire of the contracting officer as to the true meaning of the contract before submitting a bid." Triax Pacific, Inc. v. West, 130 F.3d 1469, 1474-75 (Fed. Cir. 1997). Absent such inquiry, "a patent ambiguity in the contract will be resolved against the contractor." Id. at 1475. This doctrine "prevents contractors from taking advantage of ambiguities in government contracts by adopting narrow interpretations in preparing their bids and then, after the award, seeking equitable adjustments to perform the additional work the government actually wanted." Id.

The contractor's general duty to inquire into a contract's patent ambiguities is reflected in a particular duty regarding specifications. When the Government uses specifications in a contract, "there is an accompanying implied warranty that these specifications are free from

errors." Robins Maintenance, Inc. v. United States, 265 F.3d 1254, 1257 (Fed. Cir. 2001) (citing United States v. Spearin, 248 U.S. 132, 137 (1918)). Defective specifications may entitle a contractor to an equitable adjustment for increased costs of performance. L. W. Foster Sportswear Co. v. United States, 405 F.2d 1285, 1290 (Ct. Cl. 1969). A contractor must show, however, that it was misled by the defective specifications. Robins Maintenance, Inc., 265 F.3d at 1257. If a contractor is aware of a defect in the specifications at the time of entering into a contract, the contractor has no claim based upon the defect. Id. at 1258. Moreover, a contractor must act reasonably in preparing its bid. Highway Products, Inc. v. United States, 530 F.2d 911, 919 (Ct. Cl. 1976). When a contractor is faced with "an obvious omission, an inconsistency, or discrepancy of significance, he is obligated to bring the situation to the Government's attention if he intends subsequently to resolve the issue in his own favor." Id.

In Beacon Construction, the Government omitted explicit contract specifications requiring weather-stripping for windows in a housing construction project, though both the specifications and the drawings made reference to such weather-stripping. Beacon Const., 314 F.2d at 502-03. The Court found that the contractor's case suffered from an "important handicap" in the form of an express warning provided in the contract: "'In any case of discrepancy in the figures, drawings, or specifications, the matter shall be immediately submitted to the contracting officer, without whose decision said discrepancy shall not be adjusted by the contractor, save only at his own risk and expense.'" Id. at 504. The Court noted that the contractor had "ample cause and opportunity" to seek an interpretation of the specifications from the Government, but that the contractor instead elected to rely upon its own "private reading" of the specifications. Id. The contractor thus shirked its affirmative obligation to seek clarity from

the Government, and the Court held the contractor was barred from recovering under its interpretation. Id.; see also Unicon, 375 F.2d at 806-07 (A discrepancy clause "calls upon the bidder to bring to the Government's attention any serious or patent discrepancy of significance, of which he is or should be cognizant").

As in Beacon Construction, the contract here contained a clause specifying that "[i]n case of discrepancy in the figures, in the drawings, or in the specifications, the matter shall be promptly submitted to the Contracting Officer, who shall promptly make a determination in writing. Any adjustment by the Contractor without such a determination shall be at its own risk and expense." App. 540. The discrepancy in the contract here was clear: the table of contents to the specifications contained a subheading for "Telescoping Stands," and the schedule of material submittals contained four line items related to telescoping stands, but the body of the specifications lacked any information regarding bleachers. App. 96; App. 372. Just like the contractor in Beacon Construction, Todd had "ample cause and opportunity" to inquire into the specifications' discrepancy, and Todd had no reason to be misled by the specifications. This is demonstrated by Todd's knowledge of the bleacher requirement, as reflected in its pricing documents. App. 81. Yet Todd relied upon its own "private reading" of the specifications to assume that it could avoid the bleacher requirement. In so doing, Todd is attempting to take advantage of an obvious omission in the contract by seeking an equitable adjustment "to perform the additional work the government actually wanted," precisely the harm forbidden by the patent ambiguity doctrine. Triax Pacific, 130 F.3d at 1475.

In short, Todd was aware of an ambiguity in the contract documents, and Todd should have made that ambiguity known to the contracting officer before submitting its bid. Todd's

reliance upon that ambiguity now is untimely and unfounded, and this Court should accordingly grant our motion for summary judgment.

**CONCLUSION**

For the reasons given above, the Court should grant our motion for summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director

s/ Sean B. McNamara
SEAN B. McNAMARA
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L. Street, N.W.
Washington, DC 20530
Tele: (202) 305-7573
Fax: (202) 514-8624

Attorneys for Defendant

OF COUNSEL:
Henry R. Richmond
Trial Attorney
U.S. Army Corps of Engineers
Savannah District
100 West Oglethorpe
PO Box 889
Savannah, GA 31402

February 2, 2007

CERTIFICATE OF FILING

I hereby certify that on this 2nd day of February, 2007, a copy of the foregoing "DEFENDANT'S MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

s/ Sean B. McNamara